In the Matter of the Estate of Louis B. Basten, Deceased.

Surrogate's Court, Ulster County, December 14, 1953.

*N. LeVan Haver* and *Richard Overbagh* for E. Van Dyke Basten and another, as executors of Louis B. Basten, deceased.

*George F. Kaufman* and *Hugh R. Elwyn* for Myrtle J. Basten, claimant.

*N. Jansen Fowler* for Austin S. Basten.

STERLEY, S. This proceeding was brought in connection with the judicial settlement of the above estate to determine the validity and legality of a claim filed by Myrtle J. Basten for services rendered in nursing and caring for decedent and decedent's wife, Mary S. Basten, for a period of three years prior to the date of death and at $25 per week totaling $3,900

The facts appear to be as follows: Myrtle J. Basten, the claimant, is the wife of E. Van Dyke Basten, one of the executors and also one of the sons of Louis B. Basten, the deceased herein, and his wife Mary S. Basten. Austin S. Basten, the other executor, is also a son of Louis B. Basten, the deceased herein, and his wife Mary S. Basten.

Mary S. Basten died on December 19, 1949, and Louis B. Basten, the decedent herein, died on January 6, 1951, both being residents of the city of Kingston, Ulster County, New York, at the time of their death. It appears that at the time of their death the said Louis B. Basten, the deceased herein, his wife, Mary S. Basten, E. Van Dyke Basten and the claimant, Myrtle J. Basten, lived together at 103 Emerson Street, Kingston, New York, being members of a family unit and had so resided at such residence for some time prior to the period covered by the claim in question.

During the period in question the said Mary S. Basten and the decedent herein, Louis B. Basten, were elderly people, either being invalids or semi-invalids and necessarily required considerable care and attention. Myrtle J. Basten, the claimant herein, together with E. Van Dyke Basten, her husband and son of the said Louis B. Basten and Mary S. Basten, Thomas Hanlon, a registered practical nurse, who was employed for a long period of time and other practical nurses rendered the personal care and attention to the said Louis B. Basten and Mary S. Basten.

It appears from the testimony that the said Thomas Hanlon was paid by checks from the checking accounts of Mary S. Basten and/or Louis B. Basten. It further appears from the testimony that during the entire period of time Myrtle J. Basten, the claimant herein, regularly received checks in the sum of $40 a week from the same accounts. It is claimed herein by Myrtle J. Basten, the claimant, that these amounts were paid for room and board for the said Louis B. Basten and Mary S. Basten. Many of the checks were signed by E. Van Dyke Basten under a power of attorney. It is claimed by the said Myrtle J. Basten, the claimant herein, that the payment of the said sum of $40 a week was solely for room and board and was not in payment for services rendered in the care and attention of the said Louis B. Basten and Mary S. Basten. It does not appear from the testimony that there was any demand for any further compensation on the part of Myrtle J. Basten during the lifetime of either Louis B. Basten or Mary S. Basten and there was no indication that

there would be any demand for payment of such alleged services until the claim in question was filed.

As heretofore stated Mary S. Basten died December 19, 1949, and the decedent Louis B. Basten died on January 6, 1951. The last will and testament of Louis B. Basten was admitted to probate by this court on February 5, 1951, and Austin S. Basten and E. Van Dyke Basten, named as executors therein, duly qualified as such and letters testamentary were issued to them. Austin S. Basten, a coexecutor and a brother of E. Van Dyke Basten, both of whom were sons of Mary S. Basten and Louis B. Basten, the decedent herein, was not informed that the claim here in question was contemplated until November, 1951, and it appears it was not executed until on or about May 17, 1952; therefore, the claim in question was filed some sixteen months after the death of decedent and some fifteen months after the admission of the last will and testament of Louis B. Basten to probate.

It appears to this court that there are two questions presented, first, whether or not there was an express agreement under which Myrtle J. Basten, the claimant herein, was to be paid the amount claimed; second, and if there were no such agreement, whether the claimant was entitled to recover on an implied contract and to be paid on the basis of *quantum meruit* for services alleged to have been performed. The first question seems to have been disposed of by a statement of Judge KAUFMAN, attorney for the claimant, that no express contract was made as appears on page 157 of the testimony, lines two to nine. It seems, therefore, unnecessary for this court to discuss this issue.

Therefore, the remaining question to be determined here, since there was no such agreement, is whether or not the claimant is entitled to recover on an implied contract and to be paid on the basis *quantum meruit* for services alleged to have been performed.

It appears that the decedent in this case did not offer to pay for any of the services during his lifetime. Naturally, the question arises why there was not at least partial payment made if there was an understanding between the claimant and the deceased to do this. It seems well settled that where the services are rendered for one of close degree of relationship the law presumes that such services were rendered through love and affection and not for pay and by reason of this the law requires proof of an express contract. This apparently was not existent in this case.

The general rule is where services are rendered and accepted, there is a presumption that payment of compensation is at least implied but where the parties are related the inference is that the performance was without expectation of payment. (*Matter of Jones,* 70 N. Y. S. 2d 739.)

It has been held that between relatives board and services do not raise an implied promise to pay. (*Terry* v. *Bale,* 1 Dem. 452.) It has further been held so as between members of the same family. (*Matter of Stevenson,* 86 Hun 325.) The alleged services herein were rendered by Myrtle J. Basten, the claimant herein, who was a daughter-in-law of the deceased. The testimony shows that the deceased and his wife, Mary S. Basten, the claimant herein, Myrtle J. Basten, and her husband, E. Van Dyke Basten, lived in a home as a one-family unit. It may be said that there is some distinction between the relationship of a father and daughter and a father and daughter-in-law. Although an " in-law " is sometimes very different, it would not need to run to the opposite extreme, in order that it might be regarded as are other close relationships, which, except under special negativing circumstances, dispel the ordinary contractual implication.

*Matter of Green* (247 App. Div. 540), is a case to the effect that the basis of negation of an implied contract need not necessarily be any more than a long-continued and well-demonstrated friendship.

The present case is indicative of a deficiency in the claim's support by the undisputed fact that the claimant never presented any claim to the decedent in his lifetime and that she filed none with the executors until approximately fifteen months after the issuance of letters testamentary. Such laches were dealt with in *Matter of Long* (144 Misc. 181). It seems difficult to escape the inference that the claim was an " afterthought " in such cases.

As a general proposition, the rendition and acceptance of services, *ipso facto,* implies a contract to pay for reasonable value. An old and leading case which sets forth this principle is *Moore* v. *Moore* (21 How. Prac. 211). (See, also, *Matter of Mason,* 134 Misc. 902, 904, and *Matter of Hughes,* 229 App. Div. 614.)

This principle is frequently held inapplicable in cases of a relationship, kinship or otherwise, between parties, indicative of a negation of the usual implication. So, in cases where there is such a relationship, a valid express contract is the only dependable implementation of a recovery.

As stated by LEHMAN, J., in *Robinson* v. *Munn* (238 N. Y. 40, 43): " The inference of an implied contract to pay the reasonable value of services rendered which may arise from the mere rendition and acceptance of the service cannot be drawn where because of the relationship of the parties, it is natural that such services should be rendered without expectation of pay." (See, also, *Matter of Mason, supra*; *Matter of Long, supra*; *Matter of Flood,* 133 Misc. 77, and cases there cited.)

Where there is or was a bond of relationship, or some equivalent circumstance, then, because of common experience with respect to the amenities of civilization, the implication of a contract is regarded as having two strikes against it. It is out unless there is some special consideration rationally differentiating the situation in some such manner, as is variously exemplified in the cited group of cases *infra.*

In cases by way of implication, the contractual basis must rest on practically unequivocal evidence of a mutual expectation and intent that, despite the relationship, payment to the renderer of services or other benefits would eventually become due from the recipient. (*Matter of Mulderig,* 196 Misc. 915.)

As shown by the above-quoted commentary of Judge LEHMAN, the adduction of evidence strong enough to overcome the presumption because of the relationship is frequently found to be difficult or impossible. But, in some cases of this category, the conditions have been such that it has been determined that a recovery could be had and a *quantum meruit* has been awarded. Illustrative cases include: *Matter of Hamilton* (70 App. Div. 73, affd. 172 N. Y. 652); also, *Matter of Burton* (143 Misc. 440); *Matter of Chafee* (122 Misc. 768), and *Matter of Enos* (61 Misc. 594).

The evidence in the claimant's case herein is not strong enough to overcome the presumption existing because of the relationship between the deceased and the claimant.

There is an underlying theory that no presumption exists as between two who are in no way related to each other that services would be gratuitously rendered or ministered to be needs of another without compensation. It stands to reason that the rendition of such services without compensation is abnormal and, therefore, is not probable. However, in cases of a subsisting relationship between the parties, there is a counter-inference. This, too, is based on probability, but in the opposite direction.

In the *Long* case (144 Misc. 181, 187, *supra*), the court said " In determining the validity of a claim presented against the

estate of a decedent it is for the court to take into consideration all of the facts and surrounding circumstances, such as the relation of the parties, the nature of the claim presented ''.

There would appear to be a close relationship between the statement of the court in the *Long* case and the surrounding circumstances and the relationship of the parties in the case before this court. In viewing the present situation as a whole, as the several evidentiary considerations are appraised in respect to their respective bearings in accordance with the applicable principles authoritatively established and binding on us, leaves a necessary legal basis for a recovery in this proceeding, a sufficiently established implied contract, somewhat short of minimum requirements. The evaluation of all the evidence is such that it cannot be said there is a preponderance sufficient to support the implication of a contract. Therefore, this court is of the opinion that the claimant, in the absence of an express agreement, is not entitled to recover on an implied contract and to be paid on the basis of *quantum meruit* for services alleged to have been performed and that the claim of Myrtle J. Basten, the claimant herein, should be dismissed.

A decree may be entered upon notice accordingly.